# United States Court of Appeals
## For the First Circuit

No. 17-1058

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL NAGELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Lynch, and Barron,
Circuit Judges.

Luke S. Rioux and Rioux, Donahue, Chmelecki & Peltier, LLC on brief for appellant.
Benjamin M. Block, Assistant United States Attorney, and Halsey B. Frank, United States Attorney, on brief for appellee.

December 19, 2018

**TORRUELLA**, **Circuit Judge**. A jury convicted Defendant-Appellant Michael Nagell ("Nagell"), a registered sex offender, of knowingly failing to update his registration, in violation of 18 U.S.C. § 2250(a). At sentencing, the district court imposed a two-level obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1, after finding that Nagell had committed perjury when he testified at trial in his own defense. The district court then sentenced him to thirty months' imprisonment, at the middle of his Guidelines sentencing range ("GSR"). Nagell now challenges the district court's finding of obstruction of justice and the resulting sentencing enhancement. We affirm.

## I.  Background

In 2007, Nagell was convicted on two counts of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and one count of traveling to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b). He was sentenced to sixty months of incarceration, to be followed by eight years of supervised release. As a mandatory condition of his release, under the Sex Offender Registration and Notification Act ("SORNA"), Nagell became a registrant in the Maine Sex Offender Registry (the "Registry") upon his release from prison.

Nagell was required to annually complete and return a "verification form" to the Registry. With that form, he also needed to include a current passport photo and pay a twenty-five

dollar fee.  Additionally, if he changed his domicile, residence, employment, or school between verification cycles, Nagell had to notify local law enforcement within twenty-four hours of that change, and also file a "notice of change of information report" with the Registry within five days.[1]  Nagell acknowledged all of these requirements in writing during his initial registration as a sex offender, and received numerous reminders from his probation officers and case workers in the years that followed.

Between 2012 and May 2015, Nagell's supervised release was twice revoked, and he received prison sentences for failing to comply with the conditions of his release, followed by additional periods of supervised release.  During this period of time, Nagell also filed several annual verification and change of information reports with the Registry.  Nagell's third period of supervised release began in July 2015.  As a condition of this third period of supervised release, he was placed in the Pharos House, a federal halfway house in Portland, Maine, which aims to facilitate the reintegration of convicts into society.

---

[1]  There is a discrepancy in the record as to whether Nagell had to file his notice of change of information report with the Registry within three or five days after changing his domicile, residence, employment, or school, but the testimony at trial was that it was within five days and that issue is nevertheless immaterial in this case.

Following his placement at Pharos House, Nagell held several jobs. Immediately after his arrival at Pharos House, Nagell's case manager, Kimberly Hartley ("Kim Hartley"), helped him apply to Single Source Staffing ("SSS"), a temporary employment agency. SSS hired him. In September 2015, SSS placed Nagell at Earle W. Noyes & Sons Moving Specialists, Inc. ("Noyes") and, in October 2015, at Emery-Waterhouse Company ("Emery-Waterhouse").[2] Between October 2015 and December 10, 2015, Nagell received concurrent SSS assignments at both Emery-Waterhouse and Noyes. On December 21, 2015, Nagell informed his probation officer that he had been hired as a full-time employee by Noyes and that his prior employment with SSS (and consequently with Emery-Waterhouse) had ceased.[3] From July 2015 to April 2016, the only Registry updates regarding employment changes were filed on December 28, 2015 and January 13, 2016, and listed Emery-Waterhouse as Nagell's employer.

Nagell's residency information also changed during this period. In September 2015, he moved out of Pharos House and back into his pre-conviction residence in Bath, Maine. Although he notified his probation officer of his change of address, he did

---

[2] Between July 2015 and December 2015, Nagell was also employed by Allstate Cleaners and by a moving company named Bunzl, though not through SSS.

[3] Nagell worked full-time at Noyes until late April 2016.

not file the corresponding notice of change of information report with the Registry.  Consequently, in November 2015, the Registry mailed Nagell's annual verification form to Pharos House.  The form was twice returned to the Registry as undeliverable, and finally reached Nagell at his new address after the Bath Police Department informed the Registry of Nagell's new residence.

On December 28 or 29, 2015, Nagell completed his annual verification form, along with a notice of change of information report updating his residence and employer information, at the Bath Police Department.[4]  In the report, however, he identified his employer as "Emery & Waterhouse," even though he had become a full-time employee at Noyes on December 21, 2015, and had ended his professional affiliation with Emery-Waterhouse and SSS earlier in December 2015.  The Registry received Nagell's forms on January 4, 2016.  Because Nagell did not provide a full physical address for his listed employer, the Registry sent a letter back to Nagell on January 4, 2016, requesting that he provide his employer's address.  In response, Nagell submitted a new notice of change of information report, dated January 13, 2016, in which he once again listed Emery-Waterhouse as his employer and included

---

[4]  It seems that Nagell signed the form on December 28th, but completed other sections of the form on December 29th.

-5-

its address.  The Registry received that new form on January 20th.  Nagell did not update his employment information after that.

Nagell continued to work full-time at Noyes until late April 2016.  On April 27, 2016, Nagell's probation officer filed a petition to revoke Nagell's supervised release for, inter alia, failing to provide the Registry with his updated employment information.  The court issued an arrest warrant and, on May 3, 2016, Nagell was arrested.  A one-count Information charged Nagell with knowingly failing to update his sex offender registration between December 2015 and April 2016, in violation of 18 U.S.C. § 2250(a).[5]  A two-day jury trial in the United States District Court for the District of Maine followed.

The parties entered a stipulation as to the first two elements of the crime, namely, that Nagell was a sex offender under SORNA by reason of a conviction under federal law, and that as a result of that conviction, he was required to register under SORNA.  The only contested issue that remained was whether Nagell knowingly failed to update his employment information at the Registry between December 2015 and April 2016, as required by SORNA.

---

[5]  18 U.S.C. § 2250(a) reads, in part:

> Whoever . . . is required to register under the Sex Offender Registration and Notification Act; . . . knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act shall be fined under this title or imprisoned not more than 10 years, or both.

-6-

At trial, the following five witnesses testified for the government's case-in-chief: Nagell's Probation Officer, Kristin Cook; SSS's Director of Recruiting, Jeremy Jackson; Noyes's Vice President, William Noyes; Office Associate II at the Registry, Sally Taylor; Bath Police Department Detective, Andrew Booth. The defense's only witness was Nagell, who took the stand in his own defense. Nagell's testimony led the prosecution to call Kim Hartley as a rebuttal witness. The jury found Nagell guilty as charged.

At sentencing, the government -- arguing that Nagell had willfully obstructed the administration of justice by committing perjury at trial -- asked for a two-level enhancement pursuant to U.S.S.G. § 3C1.1. The government relied on two instances at trial where witness testimony directly contradicted Nagell's statements under oath.

The first instance involved Nagell's testimony concerning his state of mind as to his failure to register. On direct examination, Nagell claimed that Kim Hartley, his case manager at Pharos House, had told him that she had updated his information at the Registry. When asked why he did not report Noyes as his current employer, Nagell responded, "Because when I was at the halfway house Kim said everything was taken care of. So she said she put my current jobs and current address on the information, but the form never appeared." During cross

-7-

examination, when the prosecutor asked Nagell whether he had sent any notice of change of information report to the Registry updating his employment information while at Pharos House, Nagell responded that he didn't because "Kim said she took care of that. . . . I asked her twice."

Kim Hartley's testimony as a rebuttal witness directly contradicted Nagell's statements on the stand. The following exchange is illustrative:

> Q: As a general matter, when a resident of Pharos House, somebody . . . who is part of your caseload, obtains employment outside the house, have you ever notified the sex offender registry on their behalf?
>
> A: Never.
>
> Q: Have you ever told -- told one of the residents that you would do that on their behalf?
>
> A: Never.
>
> Q: With respect to Mr. Nagell specifically, did you ever notify the sex offender registry of changes in his employment on his behalf?
>
> A: No.
>
> Q: Did you ever tell him that you would do that?
>
> A: No.

On cross-examination, Kim Hartley testified that she had met with Nagell thirty to forty times during his time at Pharos

House, and could not recall that Nagell ever "spoke to [her] about the issue of registration."

The second instance of contradictory testimony concerned Nagell's alleged visit to the Bath Police Department on January 13, 2016. According to Detective Booth's testimony, the Bath Police Department's practice was to create an internal record of any contact with a member of the public, referred to as an "incident" report. Detective Booth further testified that the Bath Police Department had record of only two incident reports involving Nagell between December 2015 and January 2016. The first one, dated December 29, 2015, indicated that Nagell visited the police station to complete his annual verification form and a notice of change of information report with Detective Marc Brunelle ("Detective Brunelle"), a sex offender specialist.[6] The second incident report, dated January 7, 2016, pertained to the notice that the Bath Police Department had issued to Nagell's neighborhood, informing that a sex offender lived in the area.

According to Detective Booth, on December 28, 2015, Nagell signed the verification form and notice of change of information report mailed to him by the Registry, in which he identified Emery-Waterhouse as his employer, despite the fact that

---

[6] The form is dated December 28th but Detective Booth testified that Nagell visited the station on December 29th.

he no longer worked there. He failed to include the physical address of his new employer. Detective Booth further testified that, on December 29, 2015, Nagell met with Detective Brunelle at the Bath Police Department regarding his registration forms. Detective Brunelle verified Nagell's identity, took his fingerprints, and filled out the lower half of the verification form. He also scanned a copy of the forms for the Department's records before mailing them to the Registry. All of this was standard practice.

The Registry received Nagell's forms on January 4, 2016. Because Nagell did not provide a complete physical address for his listed employer, the Registry requested that Nagell provide his employer's address information and enclosed a blank notice of change of information report.

On January 13, 2016, Nagell filled out and signed the notice of change of information report, providing Emery-Waterhouse's complete address, even though he no longer worked there. The form did not list Noyes as an employer. The Registry received the updated form on January 20, 2016. Nagell did not update his employment information after January 20, 2016.

During direct examination, Nagell claimed that he had filled out the January 13 form at the Bath Police Department with a police officer other than Detective Brunelle. Nagell claimed that there was a second page to this report, and that on it "the

-10-

detective wrote [']self-employed,['] put 27 Cobb Road on, and also put Noyes, and I didn't have the address for Noyes." Nagell also testified that he went home to get the address for Noyes and that he called the Bath Police Department the next day to relay it to the officer. But, Nagell explained, the officer who had helped him the day before was out, so he communicated the address to the woman who answered the call. This testimony, however, was strongly contradicted by that of Detective Booth, who testified that the Bath Police Department did not have any incident report for Nagell's alleged visit to the Department on January 13th or a scanned copy of the form. Pursuant to the Department's standard practice, it would have had both of these things had Nagell gone to the Department on January 13th.

According to the government, Nagell's testimony about Kim Hartley's statements and his alleged, yet unrecorded, January 13, 2016 visit to the Bath Police Department were clear instances of perjury and constituted grounds to impose the obstruction of justice enhancement. The government further argued that the jury's rejection of Nagell's statements also supported a finding of perjury. Nagell's defense counsel objected to the sentencing enhancement, claiming that the differing testimonies did not amount to perjury. Rather, defense counsel insisted they merely reflected different recollections of events. Defense counsel further argued against a finding of perjury by suggesting

that Kim Hartley could not remember the content of every conversation she had with Nagell and that, because one page of the January 13, 2016 notice of change of information report made it to the Registry, there was "some basis for [Nagell] to believe that he had in fact submitted the full documentation to the [Registry]."

The sentencing judge, who also presided over the trial, found that,

> [T]he defendant committed perjury during the course of that hearing on a material matter . . . in asserting that his caseworker at Pharos House, Kim Hartley, had told him that she would handle the registration for him and that he assumed that his registration had been updated. I believe Ms. Hartley testified that she never promised that she would do that. I also find that Mr. Nagell never hand delivered a registration update form to the Bath Police Department and that he relied on the Bath Police Department to deliver that form to the State. I find that, based on the testimony of Detective Booth, that testimony is unbelievable and I find it to be perjurious.

Accordingly, the judge applied a two-level enhancement pursuant to U.S.S.G. § 3C1.1,[7] which increased Nagell's offense

---

[7] Section 3C1.1 of the Sentencing Guidelines states as follows:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offence of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

level from fourteen, see U.S.S.G. § 2A3.5(a)(2), to sixteen. This, in conjunction with Nagell's criminal history category of III, yielded a GSR of twenty-seven to thirty-three months' imprisonment. The district court thereafter sentenced Nagell to thirty months in prison, to be followed by ten years of supervised release.

Nagell now appeals, challenging the district court's finding of perjury and the resulting sentencing enhancement. He argues the district court clearly erred in holding that his testimony contradicted the testimony of other witnesses, and constituted a willful attempt at obstruction of justice.

## II. <u>Discussion</u>

### A. Standard of Review

We review preserved objections to the district court's legal interpretation of the Sentencing Guidelines <u>de novo</u>, and review for clear error the court's factual findings. <u>United States</u> v. <u>Flores-Machicote</u>, 706 F.3d 16, 20 (1st Cir. 2013). Clear error is a deferential standard, under which affirmance is proper unless "upon whole-record-review, an inquiring court 'form[s] a strong, unyielding belief that a mistake has been made.'" <u>United States</u> v. <u>Cintrón-Echautegui</u>, 604 F.3d 1, 6 (1st Cir. 2010) (alteration in original) (quoting <u>Cumpiano</u> v. <u>Banco Santander P.R.</u>, 902 F.2d 148, 152 (1st Cir. 1990)).

## B.  Applicable Law

The government bears the burden of proving the facts underlying its sentencing enhancement recommendation by a preponderance of the evidence.  United States v. Cannon, 589 F.3d 514, 517 (1st Cir. 2009) ("Where, as here, a defendant challenges the factual predicate supporting the district court's application of a sentencing enhancement, 'we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence.'" (quoting United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005))).

Section 3C1.1 of the Guidelines calls for a two-level enhancement "[i]f . . . the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  U.S.S.G. § 3C1.1.  Application Note 4 lists perjury among the sorts of conduct this enhancement is intended to cover.  U.S.S.G. § 3C1.1, cmt. n.4(B).  The Supreme Court has adopted the federal definition of criminal perjury to serve as the meaning of perjury in this context, defining it as "[giving] false testimony [under oath] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993) (citing 18 U.S.C. § 1621(1)).

The sentencing enhancement for perjury, however, "is not intended to punish a defendant for the exercise of [his] constitutional right" to testify. U.S.S.G. § 3C1.1, cmt. n.2; see also Dunnigan, 507 U.S. at 95 ("[N]ot every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury."). "The enhancement does apply, however, if a defendant exercises his right to testify at trial but commits perjury in the process." United States v. Mercer, 834 F.3d 39, 48 (1st Cir. 2016) (citing U.S.S.G. § 3C1.1, cmt. n.4).

The enhancement should not be applied mechanically "merely because an evidentiary conflict exists or because the jury rejects the defendant's explanation of the facts and finds him guilty." United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006) (citing United States v. Akitoye, 923 F.2d 221, 228-29 (1st Cir. 1991)). Instead, in order to apply an obstruction of justice enhancement for perjury, the sentencing judge has to make "findings that 'encompass all the elements of perjury -- falsity, materiality, and willfulness.'" Mercer, 834 F.3d at 49 (quoting United States v. Matiz, 14 F.3d 79, 84 (1st Cir. 1994)). "A sentencing court, however, is not required to address each element of perjury in a separate and clear finding." Id. (quoting Matiz, 14 F.3d at 84). A single finding of perjury is sufficient to uphold the lower court's sentencing enhancement for obstruction of

-15-

justice.  United States v. D'Andrea, 107 F.3d 949, 959 (1st Cir. 1997).

A finding of falsity "[does] not require directly contradictory testimony but may spring from a solid foundation of circumstantial evidence".  Akitoye, 923 F.2d at 229.  "Where, as here, the sentencing judge has presided over the trial, we must allow him reasonable latitude for credibility assessments." United States v. Shinderman, 515 F.3d 5, 19 (1st Cir. 2008).

Materiality is defined in the Guidelines as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."  U.S.S.G. § 3C1.1 cmt. n.6; see also Shinderman, 515 F.3d at 19.  The materiality of a false statement is inferable from the entirety of the record and the issues at stake at trial.  See Matiz, 14 F.3d at 84 (finding a statement material because "if believed, the jury would have acquitted [the defendant]").

Finally, the level of culpability required by the obstruction of justice enhancement is willfulness.  U.S.S.G. § 3C1.1, cmt. n.2; see also United States v. Reynoso, 336 F.3d 46, 50 (1st Cir. 2003) ("[F]alse testimony caused by mistake, confusion or poor memory is not perjurious.").  Sufficient materiality could suggest the willfulness of the false statement.  See Mercer, 834 F.3d at 49.

## C.  Analysis

Nagell submits that the district court erred in applying the two-level sentencing enhancement for obstruction of justice. Specifically, he argues that his testimony did not directly contradict that of the other witnesses and that it was ambiguous at best.  We disagree.  The district judge's factual findings are well-supported by the record, and his application of the sentencing enhancement encompasses all three elements of perjury -- falsity, materiality, and willfulness.  See Dunnigan, 507 U.S. at 95-96; Mercer, 834 F.3d at 49.

Nagell contends that the district court failed to resolve testimonial ambiguities in his favor, under the principle of lenity embodied in the Guidelines.  See United States v. Clark, 84 F.3d 506, 509-10 (1st Cir. 1996).  His reliance on Clark, however, is misguided.  Prior to their amendment in 1997, the Guidelines provided that "[i]n applying [Section 3C1.1] in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant."  U.S.S.G. § 3C1.1, cmt. n.1 (Nov. 1995).  This language was removed from the Guidelines in 1997. United States v. McKeeve, 131 F.3d 1, 15 (1st Cir. 1997) (citing U.S.S.G. App. C, amend. 566 (Nov. 1997)); see also United States v. Greer, 285 F.3d 158, 182-83 (2d Cir. 2002) (remanding the case for resentencing due to the district court's application of the

-17-

old standard). As things currently stand, the district court has the responsibility to make credibility determinations about witnesses and make independent findings of fact based on a preponderance of the evidence, as the district judge did here. See Dunnigan, 507 U.S. at 95; Reynoso, 336 F.3d at 50 ("[T]he district court is the primary arbiter of witness credibility under U.S.S.G. § 3C1.1.").[8]

Nonetheless, even under the no-longer operative standard set forth in the now repealed Guidelines committee note, the record still provides clear support for the finding that Nagell committed perjury. Both on direct and cross examination, Nagell plainly and repeatedly stated that he did not think he needed to update his employment information because "Kim said she took care of that." This assertion prompted the government to introduce Kim Hartley, who flatly denied ever having given such assurance to Nagell or any other resident in the Pharos House. Nagell suggests that Kim Hartley's testimony as a whole was ambiguous as to whether she may

---

[8] Nagell also cites Gobbi, 471 F.3d at 314, in support of his contention that "the sentencing court . . . must give the defendant the benefit of any plausible doubt." However, this sentence in Gobbi cites to and relies on a portion of Akitoye, 923 F.2d at 228-29, that expressly discusses the now defunct "light most favorable" language in U.S.S.G. § 3C1.1 cmt. n.1 (1995). Because this language was removed from the Guidelines in 1997, Gobbi's instruction that the district court give the defendant the benefit of any plausible doubt should not be followed here or in the future.

have given this impression to Nagell, but she consistently denied the defense counsel's questions on the issue. The sentencing court could have easily given more credit to Kim Hartley's testimony and concluded that Nagell's statements were not the result of confusion, mistake or faulty memory, but of his intent to mislead the jury. See D'Andrea, 107 F.3d at 959.

Moreover, although a single finding of perjury would be sufficient to affirm the sentencing enhancement, D'Andrea, 107 F.3d at 959, the district court's second finding of perjury is also reasonably supported by the record. Nagell claimed in his testimony that he visited the Bath Police Department twice, on December 29, 2015 and January 13, 2016. During the second visit, he allegedly filled out a change of information form with an unidentified police officer who did not testify at trial, and the second page of the form containing the required information allegedly went missing. The Department's records corroborated the first visit, but the second, crucial visit on January 13th cannot be squared with Detective Booth's testimony regarding the Department's standard practice. The sentencing judge could have reasonably found the alleged visit to be "unbelievable" and Nagell's statements on it perjurious. We therefore find no error in this finding, let alone clear error.

Finally, Nagell challenges the materiality of the statements that the judge found to be perjurious. As defense

counsel argued during trial, however, Nagell's statements were material to his defense strategy. Through his testimony, Nagell attempted to negate having a mens rea of "knowingly," which was an element of the crime. If the jury believed him, his statements could have changed the outcome of the case, and so the statements were material. U.S.S.G. § 3C1.1 cmt. n.6; Shinderman, 515 F.3d at 19; Matiz, 14 F.3d at 84.

### III.  Conclusion

Because the district court neither committed clear error in finding that Nagell perjured himself at trial, nor, consequently, in imposing the two-level enhancement for obstruction of justice, we affirm.

**Affirmed.**