# United States Court of Appeals
## For the First Circuit

Nos. 18-2107, 18-2207

UNITED STATES OF AMERICA,

Appellee,

v.

JOSHUA AYALA-LUGO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch and Barron,
Circuit Judges.*

Marie L. Cortés-Cortés on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Antonio L. Perez-Alonso, Assistant United States Attorney, on brief for appellee.

April 29, 2021

---

* While this case was submitted to a panel that included Judge Torruella, he did not participate in the issuance of the panel's opinion. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

**LYNCH**, **Circuit Judge**.  On March 22, 2018, Joshua Ayala-Lugo, a convicted felon on supervised release, pleaded guilty to one count of illegally possessing a firearm in violation of 18 U.S.C. § 922(g)(1).  The district court sentenced him to a within-guidelines sentence of forty-six months in prison for violating § 922(g)(1) to be served consecutively with an eighteen-month sentence for violating the terms of his supervised release. Ayala-Lugo, arguing that both of these sentences were substantively and procedurally unreasonable, appeals.  We affirm.

## I. Facts and Procedural History

In 2008, Ayala-Lugo pleaded guilty to conspiring to possess various controlled substances with intent to distribute them in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), (b)(2), and 860.  On December 9, 2008, he was sentenced to ten years' imprisonment to be followed by six years of supervised release.  He began his supervised release on July 19, 2017.

About four months after his supervised release began, on November 15, 2017, Ayala-Lugo was arrested at a known drug point in Cataño, Puerto Rico while possessing a firearm and seventy-five rounds of ammunition.  Two days later, on November 17, 2017, Ayala-Lugo's probation officer notified the court that Ayala-Lugo had violated the terms of his supervised release.  On November 20, 2017, Ayala-Lugo was indicted by a grand jury for being a felon in possession of a firearm in violation of § 922(g)(l).

On March 22, 2018, Ayala-Lugo pleaded guilty to violating § 922(g)(1) and the district court accepted his plea. There was no plea agreement.

The court held a sentencing hearing on October 17, 2018. It reviewed the probation officer's sentencing guidelines calculations, which reflected a total offense level of nineteen and a criminal history category of III, and stated that the officer had correctly applied the guidelines. Based on these calculations, the guidelines imprisonment range for Ayala-Lugo's § 922(g)(1) violation was thirty-seven to forty-six months. Ayala-Lugo did not object to this calculation.

At sentencing, Ayala-Lugo's counsel requested a below-guidelines sentence of eighteen months. The government requested a low-end guidelines sentence of thirty-seven months. In support of his requested sentence, Ayala-Lugo's counsel presented a report produced by Dr. Alexandra Ramos (the "Ramos Report") saying that Ayala-Lugo has an intellectual disability. The Ramos Report was produced shortly before sentencing and was not included in the presentence investigation report ("PSR"), but at the sentencing hearing the court ordered the probation officer to amend the PSR to include it.[1] Based on the report, Ayala-Lugo asked the court

---

[1] The Ramos Report was created after Ayala-Lugo had requested that his sentencing be delayed "in order to allow for [a] psychological examination and submission of [a] defense sentencing memorandum." The court granted this request, and the

- 3 -

to consider, under U.S.S.G. § 5K2.13, a downward departure from the guidelines range because of Ayala-Lugo's alleged diminished capacity. The government contested this departure, arguing that Ayala-Lugo had a consensual relationship with the same partner for at least 15 years and had worked for over a year as a barber, showing that he had "been operating and living a more or less normal life." It also told the court that, in connection with his 2008 conviction, Ayala-Lugo had been "in charge of maintaining and distributing narcotics at the drug point to the sellers" and "would also collect the proceeds," showing that he had higher-level responsibilities and "was the person that someone at a higher position trusted." Ayala-Lugo also argued for a lower sentence because "there is a sentencing disparity when you compare Puerto Rico sentences with national sentences" and because other courts are "disavow[ing] the guidelines and are pinning down sentences that are lower than the guidelines." The court said that the defense's sentencing memorandum "was very well written, very thorough, and [that it was] certainly considering it."

---

Ramos Report was produced two weeks before sentencing occurred on October 17, 2018. The PSR did not include it because the PSR was prepared in April 2018. The court told Ayala-Lugo's counsel that it was "going to include [the Ramos Report] in the [PSR]" and that he had given "a very good explanation of what's in that report." The government did not object to including the Ramos Report in the PSR.

After hearing both sentencing requests, the court explained the factors leading to the calculation of Ayala-Lugo's guidelines sentence. When discussing Ayala-Lugo's criminal history, in addition to mentioning his past convictions, the court stated without further comment that Ayala-Lugo had been adjudicated as a juvenile and had been arrested in connection with certain incidents that did not result in convictions. It then stated that "a guideline sentence in this case is appropriate" and sentenced Ayala-Lugo to forty-six months' imprisonment, the high end of the guidelines range, to be followed by a three-year term of supervised release. It said that in reaching its conclusion it had considered the "sentencing factors set forth in [18 U.S.C. § 3553(a)], defense counsel's thorough argument, the government's argument," and "the report from Dr. Ramos."

Ayala-Lugo's counsel objected to the sentence "on substantive and procedural grounds, specifically the Court's unwillingness to . . . give us the departure or variance based on the diminished capacity." In response, the court stated that it "spoke with the probation officer, and his original recommendation [before seeing the Ramos Report] was above the guidelines. And it was because of Dr. Ramos' report that he convinced me to give a guideline sentence."

Immediately after the hearing described above, the court sentenced Ayala-Lugo for violating the terms of his supervised

release. Ayala-Lugo's counsel argued that the court should consider that the § 922(g)(1) sentence "represents and includes an enhancement for being on supervision" and requested that any sentence based on the supervised release violation be served concurrently with Ayala-Lugo's earlier sentence. The government requested a midlevel guidelines sentence. The court stated that the guidelines imprisonment range for this offense was four to ten months, which Ayala-Lugo did not challenge, but that the "guideline sentence does not reflect the seriousness of Mr. Ayala's breach of trust and does not promote respect for the law." The court explained that Ayala-Lugo "has demonstrated an inability to live a law-abiding lifestyle, as evidenced by becoming involved in new criminal conduct just four months after his supervised release term commenced" and that "a guideline sentence does not protect the public." It stated that pursuant to 18 U.S.C. § 3583(e)(3), because Ayala-Lugo was on supervised release for a class A felony, it could impose a sentence of not more than five years. It then sentenced Ayala-Lugo to eighteen months' imprisonment for violating the terms of his supervised release to be served consecutively to the forty-six month sentence the court had imposed earlier. Ayala-Lugo's attorney stated that "[t]he defense objects to the Court's sentence on the violation of supervision as procedurally and substantively unreasonable" but made no further argument on this point.

Ayala-Lugo timely appealed his sentence for violating 18 U.S.C. § 922(g)(1). He timely appealed his revocation sentence after the district court granted his motion for an extension of time to do so.

## II. Analysis

Our review of a district court's sentence for reasonableness has a procedural and substantive component. See United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008). The procedural inquiry asks whether the district court made any errors like "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range." Id. (alteration in original) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). If the sentence is procedurally sound, we then consider the totality of the circumstances to review its substantive reasonableness. Id. "[W]e will vacate a procedurally correct sentence as substantively unreasonable only if it lies 'outside the expansive boundaries' that surround the 'universe' of reasonable sentences." United

States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017) (quoting United States v. Matos-de-Jesús, 856 F.3d 174, 180 (1st Cir. 2017)).

Generally, we review sentencing decisions for abuse of discretion. See United States v. Arroyo-Maldonado, 791 F.3d 193, 197 (1st Cir. 2015). However, if "a defendant fails to preserve an objection below, the plain error standard supplants the customary standard of review." Id. (quoting United States v. Fernández-Hernández, 652 F.3d 56, 71 (1st Cir. 2011)). To prevail on plain error review, the defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012)).

A. Ayala-Lugo's 18 U.S.C. § 922(g)(1) Sentence

Ayala-Lugo argues the court made three procedural errors related to his § 922(g)(1) sentence. First, he argues the court erred because it "made no findings concerning arguments for a variance based on [Ayala-Lugo's] cognitive impairment" and chose to "automatically apply the guidelines and impose a sentence in the higher end" of the guidelines sentencing range. Because Ayala-Lugo objected to the district court's decision not to reduce his

sentence due to his alleged diminished capacity, we review that argument for abuse of discretion.

The court said on multiple occasions that it considered Ayala-Lugo's argument on this point. It described his counsel's memorandum as "very thorough and very informative." The court said that it chose not to apply an upward variance to Ayala-Lugo's sentence because of the Ramos report detailing his diminished capacity. It also explained that its guidelines sentence "protects the public from further crimes by Mr. Ayala." Cf. U.S.S.G. § 5K2.13 (stating that a downward departure for diminished capacity is not appropriate if the defendant's offense or criminal history "indicate a need to protect the public"). The court did not automatically apply a guidelines sentence and there was no procedural error in refusing to grant a downward departure.

Ayala-Lugo's next two arguments are that the court procedurally erred when it failed to explain why it rejected his § 3553(a)(6) sentencing disparity argument and when it allegedly relied on his past arrests (which did not result in convictions) at sentencing. Because he did not preserve these issues, we review for plain error. Arroyo-Maldonado, 791 F.3d at 197.

As to the court's alleged failure to address Ayala-Lugo's sentencing disparity argument, the court stated that it considered all of the § 3553(a) factors, a statement that is "entitled to significant weight." United States v. Santiago-

Rivera, 744 F.3d 229, 233 (1st Cir. 2014). It "need not verbalize its evaluation of each and every [§] 3553(a) factor." United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 7 (1st Cir. 2019) (alteration in original) (quoting United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016)). Further, the district court did explain its rejection of the sentencing disparity argument. It stated that how other districts handle sentencing is "up to them," that "[t]hey just think that in many cases it's appropriate to sentence someone below the guidelines," and that "[m]aybe they should start sentencing within the guidelines range, and [their] large amount of offenses may go down, like they are going down here." There was no plain procedural error.

As to Ayala-Lugo's arrests, the court merely recited them at sentencing and noted that they did not result in convictions. It did not rely on them in imposing its sentence, so it did not err. See United States v. Rodríguez-Reyes, 925 F.3d 558, 563 (1st Cir. 2019); United States v. Mercer, 834 F.3d 39, 49-50 (1st Cir. 2016).

Ayala-Lugo's argument that his sentence was substantively unreasonable also fails. His within-guidelines sentence is presumptively reasonable and, to succeed, he "must adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons." United States v. Cortes-Medina, 819 F.3d 566, 572 (1st Cir. 2016)

(quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011)).  The district court explained that its guidelines sentence was "appropriate taking into consideration everything the Court has mentioned, Mr. Ayala's prior involvement with the criminal justice system, the report from Dr. Ramos, [and] the information contained in the pre-sentence investigation report."  In particular, it emphasized that Ayala-Lugo had committed a new crime after being on supervised release for only four months.  Because the court gave a "plausible sentencing rationale and [reached] a defensible result," its sentence is substantively reasonable. United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

B. Ayala-Lugo's Supervised Release Violation Sentence

Next, Ayala-Lugo challenges the procedural and substantive reasonableness of his supervised release violation sentence.[2]  We apply plain error review, as Ayala-Lugo made only "a general objection" to the reasonableness of his sentence, which is "'not sufficient to give the district court notice of the specific issue raised' on appeal."  United States v. Hurley, 842

_____

[2] The government argues that Ayala-Lugo's appeal of this sentence was untimely because he filed a notice of appeal forty-one days after judgment was entered.  See Fed. R. App. P. 4(b)(1)(A)(i); United States v. Gonzalez-Rodriguez, 777 F.3d 37, 40 (1st Cir. 2015).  However, Ayala-Lugo sought and received an extension of time from the district court to file a notice of appeal, so his appeal was timely.  See Fed. R. App. P. 4(b)(4).

F.3d 170, 173 (1st Cir. 2016) (quoting United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011)).

Ayala-Lugo argues that his revocation sentence was procedurally unreasonable because the court did not consider his argument "that the underlying offense was already accounted for in the guidelines calculations" or his recommendation "that the [revocation] sentence be concurrent with the sentence imposed for the underlying offense" (emphasis omitted).  But the court did consider and reject that argument and recommendation at sentencing.  It said it was not persuaded because the fact that his § 922(g)(1) guidelines sentence was enhanced because he was on supervised release "happens in every case."  See Coombs, 857 F.3d at 451 ("[T]here is no legal impediment in sentencing the defendant both as a criminal and as a supervised release violator.").

His sentence was also substantively reasonable.  The court explained that it had considered the factors in 18 U.S.C. § 3553(a) and the guidelines calculation.  It emphasized that Ayala-Lugo had committed a new crime only four months after his supervised release term began, demonstrating "an inability to live a law-abiding lifestyle."  It reasoned that because a guidelines sentence "does not reflect the seriousness of Mr. Ayala's breach of trust[,] does not promote respect for the law," and "does not protect the public from further crimes by Mr. Ayala," an 18-month sentence was appropriate.  That sentence was well below the five-

year statutory maximum applicable here.  <u>See</u> 18 U.S.C.
§ 3583(e)(3).  The court's reasoning was plausible, and it reached
a defensible result.  <u>See</u> <u>Martin</u>, 520 F.3d at 96.

## III. Conclusion

<u>Affirmed</u>.