# United States Court of Appeals
## For the First Circuit

No. 15-2355

UNITED STATES OF AMERICA,

Appellee,

v.

ELVIN ROMÁN-DÍAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Selya and Kayatta,
Circuit Judges.

Barry S. Pollack and Pollack Solomon Duffy LLP on brief for appellant.

Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, on brief for appellee.

April 7, 2017

**SELYA**, **Circuit Judge**.  Defendant-appellant Elvin Román-Díaz asserts that the sentencing court erred in "departing" from one criminal history category (CHC) to another without notice or an opportunity to be heard.  He further asserts that the sentencing court erred in ordering his federal sentence to run consecutive to an undischarged state sentence.  Finding no departure and no abuse of discretion in the imposition of the challenged consecutive sentence, we affirm.

## I.  BACKGROUND

A summary of pertinent events suffices to lend perspective.  We draw the facts from the plea agreement (the Agreement), the change-of-plea colloquy, the undisputed portions of the presentence investigation report (PSI Report), and the sentencing transcript.  See United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

During 2012, the appellant and others engaged in a conspiracy to distribute controlled substances in and around Ponce, Puerto Rico.  The appellant functioned as an enforcer for the drug ring and also stored drugs and weapons for it.  While the conspiracy was velivolant, a high-school student (Juan Ruiz-Vega) was shot and killed with a rifle owned by a member of the drug ring.

On July 24, 2013, a federal grand jury sitting in the District of Puerto Rico handed up a two-count indictment charging the appellant with conspiring to possess with intent to distribute in excess of 280 grams of cocaine base (crack cocaine) and detectable amounts of cocaine, heroin, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one), and aiding and abetting in the possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (count two). After some skirmishing, not relevant here, the appellant pled guilty to both counts pursuant to the Agreement.

In the Agreement, the appellant stipulated to handling, as part of the conspiracy, at least 112 grams but less than 196 grams of crack cocaine. The parties agreed that this drug weight corresponded to a base offense level of twenty-eight for count one, see USSG §2D1.1, and that a three-level credit for acceptance of responsibility was warranted, see id. §3E1.1. The parties further agreed to recommend a sixty-month sentence on count one and a consecutive sixty-month mandatory minimum sentence on count two. Finally, the parties agreed to recommend that the aggregate federal sentence be served concurrently with an undischarged 1,000-year state sentence previously imposed for convictions

related to the Ruiz-Vega murder (which the parties considered to be relevant conduct, see id. §1B1.3(a)).[1]

The Agreement contained no stipulation as to either the appellant's CHC or his anticipated guideline sentencing range (GSR). The Agreement's offense level and sentencing recommendations, though, offer some indication that the parties held out the hope that the appellant would be placed in CHC I.

After accepting the appellant's plea, the district court ordered the probation office to prepare the PSI Report. When received, the report recommended that the court apply the murder cross-reference, see id. §2D1.1(d)(1), on the ground that the Ruiz-Vega murder took place in the course of the conspiracy. Accepting this recommendation had the effect of increasing the appellant's adjusted offense level from twenty-five to forty. See id. §2A1.1. Combined with a recommended CHC of III,[2] this recasting yielded a GSR of 360-480 months for count one. See id. §5G1.1(a).

---

[1] Although Puerto Rico is not a state, sentences imposed by the Puerto Rico courts — like the sentence imposed with respect to the Ruiz-Vega convictions — have the same force and effect for federal sentencing purposes as sentences imposed by state courts. See, e.g., United States v. Carrasco-de-Jesús, 589 F.3d 22, 24, 27 (1st Cir. 2009) (treating an undischarged Puerto Rico sentence as a state sentence for purposes of evaluating propriety of consecutive sentence). For ease in exposition, we employ a conventional shorthand and refer to the Ruiz-Vega sentence as a state sentence.

[2] In recommending that the appellant be placed in CHC III, the PSI Report did not attribute any criminal history points for convictions related to the Ruiz-Vega murder. This exclusion was

With respect to count two, the PSI Report was straightforward. It recommended — as had the parties — the statutory minimum term of sixty months' imprisonment. See 18 U.S.C. § 924(c)(1)(A)(i); USSG §2K2.4(b); see also United States v. Rivera-González, 776 F.3d 45, 49 (1st Cir. 2015) (explaining that the statutory minimum sentence is, in such circumstances, the guideline sentence).

The district court convened the disposition hearing on September 24, 2015. The appellant beseeched the court to follow the sentencing framework laid out in the Agreement and sentence him to two consecutive sixty-month incarcerative terms (a total of 120 months' imprisonment), to run concurrently with his state sentence for the convictions related to the Ruiz-Vega murder. The prosecutor concurred.

The district court determined that the Ruiz-Vega murder did not comprise relevant conduct and, thus, refused to apply the murder cross-reference. The court then determined, based on the parties' stipulation as to drug weight, that the base offense level was twenty-six. See USSG §2D1.1(c)(7).[3] The court noted, though,

_____

consistent with the PSI Report's conclusion that the Ruiz-Vega murder occurred in the course of the conspiracy and, thus, constituted relevant conduct. See United States v. Correy, 570 F.3d 373, 390-91 (1st Cir. 2009).

[3] The district court appropriately treated the 2014 edition of the sentencing guidelines as controlling. See United States v. Carrasco-Mateo, 389 F.3d 239, 242 n.1 (1st Cir. 2004) (explaining

that this stipulated drug weight underrepresented the appellant's actual complicity. After crediting the appellant for acceptance of responsibility, the court set his total offense level at twenty-three.

Turning to the other side of the grid, the court determined that the appellant should be placed in CHC IV (a determination that added criminal history points for the state convictions related to the Ruiz-Vega murder because that murder was not deemed relevant conduct). The appellant initially objected to this recasting of the murder cross-reference, but retracted his objection once the court explained that, despite the higher CHC, the elimination of the murder cross-reference would result in a substantially lower GSR (seventy to eighty-seven months).[4]

The court proceeded to sentence the appellant to a top-of-the-range incarcerative term on count one (eighty-seven months) and the mandatory minimum incarcerative term (sixty months) on

_____

that a sentencing court must apply "the guidelines in effect at the time of sentencing unless doing so would present ex post facto problems"); see also USSG §1B1.11(a). The parties, however, appear to have used either the 2012 or 2013 edition when drafting the Agreement. This explains the apparent discrepancy in the base offense level corresponding to the stipulated drug weight. Such a discrepancy is inconsequential for present purposes.

[4] The recasting, though, had a potentially adverse effect: it meant that the question of whether the aggregate federal sentence would run concurrently or consecutively to the undischarged state sentence was shifted from the guidance of USSG §5G1.3(b) to USSG §5G1.3(d). We discuss the concurrent/consecutive question infra.

count two.  As provided by statute, see 18 U.S.C. § 924(c)(1)(D)(ii), the sentence imposed on count two was ordered to run consecutively to the sentence imposed on count one.  The court also ordered both sentences to run consecutively to the undischarged state sentence.

This timely appeal followed.

## II. ANALYSIS

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court effected a sea change in the law of federal sentencing, declaring the sentencing guidelines advisory and directing appellate courts to review sentences for reasonableness. See id. at 245, 260-61.  The Court subsequently clarified that, in this context, review for reasonableness is functionally equivalent to review for abuse of discretion.  See Gall v. United States, 552 U.S. 38, 51 (2007).  That review entails a two-step process: an inquiring court first should resolve any claims of procedural error and then should address any challenges to the substantive reasonableness of the sentence imposed.  See id.; United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

Of course, these standards of review may be altered when a party has failed to preserve particular claims of error in the court below.  In such an event, review is for plain error.  See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015).  To prevail under this rigorous

standard, an appellant must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

## A.

The appellant's first line of attack deals with the district court's choice of a CHC. In his view, the court erred by "departing" from a CHC of III to a CHC of IV without either notice or an opportunity for him to be heard, thus violating Federal Rule of Criminal Procedure 32(h).[5] Since this claim was not aired below, review is for plain error.

The premise of the appellant's argument is unimpeachable: under Rule 32(h), a defendant is entitled to notice prior to any departure on a ground not identified for departure in the PSI Report or the parties' presentencing submissions. But the

---

[5] We recently have explained that Rule 32(h) is "a vestige of the time before [Booker], an era when the guidelines were mandatory." United States v. Santini-Santiago, 846 F.3d 487, 489-90 (1st Cir. 2017). Under an advisory guideline regime, a sentencing court has considerable flexibility to vary a sentence, up or down, from the guideline range. See id. at 490. Unless the court specifically states that it is departing, even a sentence outside the GSR is almost always treated as a variance, not a departure. See id. There is no general notice requirement for variances. See Irizarry v. United States, 553 U.S. 708, 714 (2008).

appellant's attempt to apply that premise here is mistaken.  We explain briefly.

The appellant asserts that the district court's decision to place him in a higher CHC constituted a departure.  This assertion is simply wrong.  In federal criminal sentencing, the term "departure" is a term of art.  It refers specifically to a decision made by a sentencing court, after constructing the applicable guideline range, to impose a sentence above or below that range on one of certain enumerated grounds.  See, e.g., United States v. Wallace, 573 F.3d 82, 96 (1st Cir. 2009); United States v. Sanchez, 354 F.3d 70, 78-79 (1st Cir. 2004).  Part 5K of the sentencing guidelines collects those enumerated grounds.  They include, for example, situations in which the offense conduct led to death, USSG §5K2.1; situations in which the offense conduct led to significant physical injury, id. §5K2.2; and situations in which the offense conduct involved extreme psychological injury, id. §5K2.3.

Here, however, there was no departure.  The guideline range itself is a product of two subsidiary determinations.  The sentencing court must determine the offender's total offense level and his CHC.  See United States v. Parkinson, 44 F.3d 6, 9 (1st Cir. 1994).  The decision about which the appellant complains — the determination that CHC IV applied — was integral to that process and was made as a part of it.  As such, it was not a

departure and was not subject to the notice requirements of Rule 32(h). See Irizarry v. United States, 553 U.S. 708, 714 (2008).

In all events, the appellant's claim that the court made the CHC determination without giving him adequate notice is specious. He and his counsel knew all along of the convictions related to the Ruiz-Vega murder and knew that those convictions would be factored into the calculation of his GSR. That he did not anticipate the exact manner in which the court would elect to use those convictions does not mean that he was deprived of notice in any meaningful sense. Cf. United States v. Vega-Santiago, 519 F.3d 1, 5 (1st Cir. 2008) (explaining that "[g]arden variety considerations of culpability, criminal history, likelihood of re-offense, seriousness of the crime, nature of the conduct and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing").

The appellant's remaining claim — that he was not afforded an opportunity to be heard on the court's CHC determination — is jejune. In mounting this claim, the appellant invokes Federal Rule of Criminal Procedure 32(i)(1)(C), which states that the sentencing court "must allow the parties' attorneys to comment on . . . matters relating to an appropriate sentence." Refined to its essence, the rule requires that the court furnish the defendant "a meaningful opportunity to comment on the factual

information on which his or her sentence is based." United States v. Rivera-Rodríguez, 489 F.3d 48, 53-54 (1st Cir. 2007) (quoting United States v. Berzon, 941 F.2d 8, 10 (1st Cir. 1991)). The sentencing guidelines reflect much the same sentiment: they require that a defendant be afforded "an adequate opportunity" to address "any factor important to the sentencing determination [that] is reasonably in dispute." USSG §6A1.3(a).

Here, the appellant had every opportunity to comment upon the sentencing court's proposed treatment of the convictions related to the Ruiz-Vega murder. There is no indication that the court at any point refused to hear the appellant or his counsel regarding the CHC determination — a determination that, as noted above, actually favored the appellant. To cinch the matter, the appellant's counsel, during the sentencing hearing, participated in a discussion with the court and the prosecutor. In that discussion, he assented to the court's decision to give the appellant three additional criminal history points — the very points that shifted the appellant from CHC III to CHC IV.

To say more about the ersatz "departure" claim would be supererogatory. The appellant has not challenged the propriety of his placement in CHC IV; instead, he has challenged only the procedural aspects ancillary to the CHC determination. We hold, without serious question, that there was no error, plain or

otherwise, in the procedures accompanying the district court's CHC determination.

## B.

We turn next to the appellant's contention that the district court misapplied the sentencing guidelines in determining that his sentence should be imposed consecutively to the millennium-long state sentence.[6]  Because it is at least arguable that this contention was advanced below, review is for abuse of discretion.  See United States v. Carrasco-de-Jesús, 589 F.3d 22, 26 (1st Cir. 2009).

This assignment of error is groundless.  To begin, the district court had discretion to determine whether the sentence should run consecutive to or concurrent with the state sentence. After all, "[a] sentencing court's choice between a consecutive or a concurrent sentence with respect to a defendant who is subject to an undischarged [state sentence] is normally discretionary." Carrasco-de-Jesús, 589 F.3d at 27 (citing 18 U.S.C. § 3584(a)).

---

[6] With respect to this feature of his sentence, the appellant reprises the contention that he should have been provided with notice and an opportunity to be heard.  This contention is hopeless.  The record makes manifest that the appellant had both notice of the issue and a meaningful opportunity to advocate for a concurrent sentence: that issue was spotlighted in the Agreement and, before any sentence was imposed, defense counsel argued vociferously that the court should run the aggregate federal sentence concurrently with the undischarged state sentence.

To be sure, a district court's discretion to choose between making a sentence consecutive or concurrent is not absolute. See United States v. Ziskind, 471 F.3d 266, 271 (1st Cir. 2006). In effecting such a choice, a court must consider the factors set forth in 18 U.S.C. § 3553(a), "including any applicable sentencing guidelines or policy statements." Carrasco-de-Jesús, 589 F.3d at 27 (citing 18 U.S.C. § 3584(b)). One such provision is USSG §5G1.3, which deals with situations in which a defendant is subject to an undischarged state sentence.[7]

USSG §5G1.3 covers four possible scenarios. Subsection (a) applies when the offense of conviction "was committed while the defendant was serving a term of imprisonment." This subsection is inapposite where, as here, the offense of conviction is committed before the commencement of the undischarged state term of imprisonment. In that event, one of the three remaining subsections may apply.

Subsections (b) and (c), though, pertain only when the undischarged state term of imprisonment qualifies as "relevant

---

[7] In his reply brief, the appellant complains that the district court did not explicitly mention section 5G1.3. That is true as far as it goes, but it does not take the appellant very far. What counts is not whether a sentencing court explicitly mentions a guideline provision but, rather, whether the court correctly applies that provision.

- 13 -

conduct" with respect to the offense of conviction.[8]  See, e.g., United States v. Lino, 493 F.3d 41, 44 (1st Cir. 2007); United States v. McCarthy, 77 F.3d 522, 537 (1st Cir. 1996).  Given this limitation, neither subsection has any bearing here: the court below ruled that the appellant's convictions stemming from the Ruiz-Vega murder did not encompass relevant conduct, and that ruling has not been appealed.  It is, therefore, the law of the case.  See United States v. Matthews, 643 F.3d 9, 12 (1st Cir. 2011).

This leaves subsection (d), which covers "any other case involving an undischarged term of imprisonment."  USSG §5G1.3(d). When — as in this case — an undischarged state term of imprisonment covers an offense that took place prior to serving a term of imprisonment and is not relevant conduct, subsection (d) applies. That subsection cedes the sentencing court discretion to impose a sentence that runs concurrently with, partially concurrently with, or consecutively to the undischarged state term of imprisonment; provided, however, that the sentencing court considers the factors set out in 18 U.S.C. § 3553(a) and the applicable GSR.  See United States v. Llanos-Falero, 847 F.3d 29, 36 (1st Cir. 2017).

---

[8] Subsection (b) applies to sentences already imposed.  See, e.g., Carrasco-de-Jesús, 589 F.3d at 27.  Subsection (c) applies to anticipated sentences.  See USSG §5G1.3, cmt. n.3 (explaining that "[s]ubsection (c) applies to cases in which the federal court anticipates that, after the federal sentence is imposed, the defendant will be sentenced in state court" (emphasis supplied)).

- 14 -

In this instance, the court carefully considered the section 3553(a) factors and the appellant's guideline range. It explained its calculation of the GSR and stated that it had considered "the general circumstances of the offense and all [section] 3553 factors." The court went on to note that the appellant (age forty-four at the time of sentencing) had consistently been before the judicial system since age thirty and had recently been convicted of violent offenses related to what the court described as "the Ponce massacre." Seen in this light, we think that the district court acted comfortably within the encincture of its discretion in choosing to run the aggregate federal sentence consecutively to the undischarged state sentence. See 18 U.S.C. § 3584(b); United States v. Figueroa-Figueroa, 791 F.3d 187, 191 (1st Cir. 2015).

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the sentence is

**Affirmed.**