# United States Court of Appeals
## For the First Circuit

No. 18-1217

UNITED STATES,

Appellee,

v.

JOSÉ FRANCISCO RODRÍGUEZ-REYES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Selya, and Lynch,
Circuit Judges.

Luis A. Guzmán Dupont for appellant.
David C. Bornstein, Assistant United States Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, and Rosa Emilia Rodríguez-Vélez, United States Attorney, were on brief, for appellee.

June 5, 2019

**LYNCH**, **Circuit Judge**.     This is a challenge to the imposition of an upwardly variant sentence of thirty-six months' imprisonment, following a guilty plea by José Francisco Rodríguez-Reyes (Rodríguez) to a charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  The firearm was an AM-15 multi-caliber assault rifle which accepted 5.56 millimeter military-style ammunition.     Rodríguez tried unsuccessfully to escape arrest.  Rodríguez did not challenge either the procedural or substantive reasonableness of the sentence in the district court.

As to procedural reasonableness, Rodríguez argues on appeal that the district court: (1) erred in the course of sentencing by discussing Rodríguez's arrests that did not result in convictions; (2) failed to consider adequately the 18 U.S.C. § 3553(a) factors; and (3) erred in varying upward from the government's sentencing recommendation.     As to substantive reasonableness, Rodríguez argues that (1) the district court did not sufficiently consider unspecified mitigating factors and the reasons for the government's sentencing recommendation, and (2) the sentence imposed was longer than necessary.

Finding no reversible error, we affirm Rodríguez's sentence.

I.

"When a sentencing appeal follows a guilty plea, 'we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report . . . and the record of the disposition hearing.'" United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010) (quoting United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009)).

A.   Facts of the Offense

On February 23, 2017, officers from the Puerto Rico Police Department (PRPD) received information about a future firearm transaction, including the location, date, time, and description of vehicles likely to be involved.  PRPD officers, along with agents from the federal Department of Homeland Security (DHS), during surveillance observed Rodríguez and two other men standing near the rear hatch of a Jeep Cherokee looking at a rifle. Rodríguez drove away in the Jeep and the police officers and agents followed by car; Rodríguez then parked and entered the car of another man involved in the attempted firearm transaction.  The men noticed the police officers and agents and fled by vehicle. Their vehicle eventually crashed, and the officers detained the two men.  After Rodríguez and the other man consented to a search of the vehicles, the officers and agents found an AM-15 multi-caliber rifle, which Rodríguez admitted to purchasing online and was planning to sell for $2,000.

B.   Procedural History

On March 8, 2017, a federal grand jury in Puerto Rico indicted Rodríguez on one count of being a felon in possession of a firearm and one count of being an unlawful drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and (3), as well as aiding and abetting a co-defendant in the same two counts, in violation of 18 U.S.C. § 2.  Rodríguez had been convicted of prior felony charges.  On May 11, 2017, Rodríguez pleaded guilty to the one count of being a felon in possession of a firearm, and the plea agreement provided for a total offense level (TOL) of twelve.

The Presentence Investigation Report (PSR) followed the parties' calculations from the plea agreement, with a TOL of twelve resulting from a base level of fourteen and the removal of two levels for acceptance of responsibility. See U.S.S.G. § 3E1.1(a). Rodríguez had three prior convictions: two state illegal drug possession convictions in Texas (one for marijuana, one for both marijuana and cocaine), and a federal conviction for conspiracy to commit mail fraud and bank fraud in Puerto Rico.  This gave Rodríguez a criminal history category (CHC) of III.  A TOL of twelve and a CHC of III led to a guideline imprisonment range of fifteen to twenty-one months.

The PSR also listed, as required, six arrests which did not lead to convictions (but also did not lead to acquittals),

- 4 -

four of which related to Rodríguez's illegal drug possession.[1] See Fed. R. Crim. P. 32(d)(2)(A)(i) (requiring that the PSR contain information on "the defendant's history and characteristics, including . . . any prior criminal record"). The drug arrests are discussed below. The PSR also stated that "[i]n this case a variance [may be] considered since the defendant has a high risk of recidivism." That risk was evidenced by, inter alia, Rodríguez's prior criminal history (which took three pages of the PSR to recount), the fact that the offense of conviction took place within five months of his completion of a supervised release term from his federal mail and bank fraud imprisonment, and a pending arrest warrant against him in El Paso, Texas for illegal possession of marijuana. By the time of completion of the PSR, the pending Texas "charge was dismissed" because Rodríguez "was convicted in another case."

The PSR also described a history of illegal drug use by Rodríguez spanning more than twenty-five years. Rodríguez stated that he began smoking marijuana at the age of twelve and smoked marijuana approximately five times per day, having returned to drug use in 2002 after a one-year break following a drug treatment

---

[1] These arrests were, in chronological order: a 2000 Puerto Rico controlled substances possession arrest; a 2000 Puerto Rico unlicensed firearm possession arrest; a 2005 Puerto Rico "conjugal threats" arrest; two 2009 Texas marijuana possession arrests; and a 2010 New York marijuana possession arrest.

- 5 -

program (completed pursuant to a 2000 Puerto Rico drug charge). Indeed, Rodríguez tested positive for marijuana on February 27, 2017, shortly after his arrest in the present case. He also stated that he began using cocaine and Percocet when he was twenty-six, in 2004 or 2005. The PSR also stated that Rodríguez and his then-wife separated in 2005 "[a]s a result" of Rodríguez's "mari[j]uana addiction."

In his sentencing memorandum, Rodríguez did not object to the PSR or any facts within the PSR, including the facts as to the disposition of his arrests and his drug use (he did say that some of his debt had been paid off). ("The Pre-Sentence Report was discussed with [Rodríguez] and there are no objections.") His sentencing memorandum acknowledged that Rodríguez "ha[d] been using Mari[j]uana since age 12 on a daily basis" and his drug use "ha[d] escalated to the use of Cocaine and Percocet."

C.   Sentencing Hearing

In his sentencing memorandum and at the sentencing hearing, Rodríguez requested a sentence of fifteen months' imprisonment, at the bottom of the guidelines range. Rodríguez's counsel expressly referred to the sentencing memorandum at the hearing. He did not dispute the PSR's calculations. At the sentencing hearing, the government requested a sentence of twenty-one months' imprisonment, at the top of the guidelines range. It explained the disposition of Rodríguez's arrests that had not led

to convictions, and Rodríguez's counsel stated that he had no objections to the government's explanation.

The district court accepted the PSR's calculations of the TOL, the CHC, and the guidelines range. The district court then listed Rodríguez's prior arrests that did not lead to convictions, accurately describing the PSR and the government's explanation of the disposition of these arrests.

Explaining why it was following the recommendation of the probation officer and imposing an upwardly variant sentence (as recommended by the probation officer), the district court gave a number of reasons and justifications. To start, it stated that "neither [side's] sentence recommendation reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by [Rodríguez], or addresses the issues of deterrence and punishment." These statements track closely the sentencing factors laid out at 18 U.S.C. § 3553(a)(2)(A), (B) and (C).[2] The district court stated that it was also "taking into consideration that [Rodríguez's] criminal history category is underrepresented."

---

[2] In turn: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2).

The district court noted Rodríguez's "encounters with the law since he was 21 years old," as well as Rodríguez's "recidivism, his drug use history, [and] his lack of steady employment." The drug use described was that noted earlier, as well as Rodríguez's positive test for marijuana on the date of his arrest for the offense of conviction. The district court also stated that the arrest for the present firearm offense came "less than five months after having completed his supervised release term" for his federal wire and bank fraud conviction. The district court further stated that it was "taking into consideration the nature of the weapon involved, an assault rifle, which accepts 5.56 millimeter military ammunition."

After describing these reasons for the variance, the district court then imposed an upwardly variant sentence of thirty-six months' imprisonment. That variant sentence is well under the statutory maximum of 120 months. See 18 U.S.C. § 924(a)(2). At the sentencing hearing, Rodríguez did not object to the sentence or challenge its substantive or procedural reasonableness. As Rodríguez requested, the court recommended that he be placed in an institution in Florida.

Rodríguez timely appealed.

"In sentencing appeals, appellate review is bifurcated."[3] United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). We first consider whether the sentence is procedurally reasonable, and then consider whether it is substantively reasonable. E.g., United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).

A. Procedural Reasonableness

Because Rodríguez did not raise any procedural objections to his sentence at the district court, as he acknowledges, this court's review is for plain error. United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017). Plain error requires "four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001); see also United States v. Romero, 906 F.3d 196, 205 (1st Cir. 2018) (requiring showings of "(1) error, (2) plainness,

---

[3] Rodríguez's plea agreement contained a waiver of appeal provision, which was to be operative provided that he was sentenced according to the agreement's "terms, conditions, and recommendations." As Rodríguez correctly argues, the sentence imposed exceeded the sentence recommended in the plea agreement, and so he can appeal. See, e.g., United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010). The government does not argue otherwise.

(3) prejudice, and (4) an outcome that is a miscarriage of justice or akin to it" (quoting United States v. Tanco-Pizarro, 892 F.3d 472, 478-79 (1st Cir.), cert. denied 139 S. Ct. 354 (2018))).

We start with Rodríguez's argument about the district court's reference to Rodríguez's arrests that did not lead to convictions. We then turn to Rodríguez's arguments about the district court's allegedly inadequate consideration of the Section 3553(a) factors and the variance from the government's sentencing recommendation.

1. The District Court Did Not Plainly Err in Considering Rodríguez's Arrests Not Leading to Convictions as a Matter Leading to an Upward Variance

Rodríguez argues that the district court erred in "reciting" Rodríguez's six arrests that did not lead to convictions. To the extent he is arguing that the court errs in merely reciting an arrest record, he is flatly wrong. See United States v. Mercer, 834 F.3d 39, 49-50 (1st Cir. 2016). So, we go to the particulars.

The government stresses that the district court "relied on other factors" beyond arrests "when it imposed the upward variance." As to the arrests, the government argues that the four drug arrests could be considered because they met the reliability standard. That is because they were corroborated by a number of uncontested facts in the PSR about Rodríguez's drug use. It points

out that one charge was dismissed not "as a result of the evidence" but based on a Puerto Rico speedy trial rule.

We start with an overview of the law pertinent to the ability of the district court to impose an upward variance. The statute itself says that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. We have held that "[a]t sentencing, a court is not bound by the rules of evidence but, rather, may take into account any information that has sufficient indicia of reliability." United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015) (citing United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir. 1992)). The Guidelines so provide. See U.S.S.G. § 6A1.3(a). The "sentencing court has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing," United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010), which includes information contained in a presentence report, United States v. Cruz, 120 F.3d 1, 2 (1st Cir. 1997) (en banc); see also United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003) ("Generally, a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing." (quoting United States v. Taylor, 277 F.3d 721, 724 (5th Cir. 2001))).

The government cites to our recent case, United States v. Marrero-Pérez, 914 F.3d 20 (1st Cir. 2019), relying on it in part and distinguishing it as to the outcome. Rodríguez did not cite to Marrero-Pérez in briefing, but did at oral argument.

Marrero-Pérez involves an "upward departure," id. at 22, not a variance, as here. Citing to a policy statement in the Sentencing Guidelines about departures (a different category of sentence which was at issue there), see U.S.S.G. § 4A1.3, Marrero-Pérez stated that "error occurs when a district judge relies on an arrest report, without some greater indicia of reliability that the conduct underlying the arrest took place," 914 F.3d at 24 (emphasis added).[4] This statement was based on Guidelines language and is consistent with the policy statement, titled "Departures Based on Inadequacy of Criminal History Category." U.S.S.G. § 4A1.3. Marrero-Pérez held, under plain error review, that in the context of an upward departure, arrests supported by reliable information that the conduct occurred could be considered, but the arrests at issue there were not so supported, or even explained in the PSR or otherwise. 914 F.3d at 24.

---

[4] At oral argument, Rodríguez focused on the phrase "independent proof of conduct" in Marrero-Pérez, rather than "some greater indicia of reliability." 914 F.3d at 22, 24. The former phrase was not meant to proscribe any "weight" given to arrests, such as "a collection of arrests," id., or consideration of conduct underlying arrests. Nor was it meant to create a new rule that arrests could not be mentioned by a sentencing court. See Mercer, 834 F.3d at 49–50.

We have earlier noted concern with "accord[ing] any significance to a record of multiple arrests and charges without conviction unless there is adequate proof of the conduct upon which the arrests or charges were predicated." United States v. Cortés-Medina, 819 F.3d 566, 570 (1st Cir. 2016) (emphasis added); see United States v. Rondón-García, 886 F.3d 14, 25-26 (1st Cir. 2018) (finding no clear error in a district court's reliance on an arrest record for an "upward departure," where the defendant had "no prior convictions"); United States v. Gallardo-Ortiz, 666 F.3d 808, 815 (1st Cir. 2012) ("We have cautioned against district courts relying on mere arrests as indicative of a defendant's character to justify an upward departure from the GSR since a criminal charge alone does not equate with criminal guilt of the charged conduct." (emphasis added)). Reliance on bare arrests -- unexplained in the PSR or elsewhere in the district court record and "not buttressed" by "some greater indicia of reliability" -- can indeed be problematic, at least for an upward departure. Marrero-Pérez, 914 F.3d at 22, 24. But as Marrero-Pérez also said, "a reasonable person might in particular circumstances assign some weight to a collection of arrests." Id. at 22; see id. at 23 (noting that "recidivist behavior" is a "proper consideration[] at sentencing").

It is not wholly clear from the sentencing transcript whether the district court relied in part on the arrests, or

- 13 -

instead "merely <u>referred</u> to [the defendant's] dismissed charges in the course of relying on certain conduct that took place in connection with the dismissed charges." <u>Mercer</u>, 834 F.3d at 50. Even if we assume the district court here relied in part on the prior illegal drug possession arrests and that <u>Marrero-Pérez</u> squarely applies to this situation of an upward variance rather than a departure under U.S.S.G. § 4A1.3(a),[5] there was no plain error.

First and most importantly, other "indicia of reliability" support that Rodríguez engaged in the conduct charged underlying the four drug possession arrests that did not lead to

---

[5] Beyond the departure/variance distinction, discussed <u>infra</u>, <u>Marrero-Pérez</u> involved a particular set of facts distinct from this case. In <u>Marrero-Pérez</u>, the past arrests recounted, "usually involving at worst trivial conduct," lacked corroborating evidence "set forth in undisputed portions of the PSR." 914 F.3d at 22, 24. There, the district court had discussed the defendant's alleged "utter disregard for the law," in part based on the unsupported arrest record, and listed the exact number of arrests and history of warrants. <u>Id.</u> at 22. Further, <u>Marrero-Pérez</u> relied in part on prudential concerns about "still not fully explained material submitted <u>ex parte</u> by the probation officer to the [district] court concerning certain outstanding warrants." <u>Id.</u> at 25.

Here, in contrast, there were no <u>ex parte</u> submissions by the probation officer. The arrests mentioned by the district court here did not involve "trivial conduct." Corroborating evidence about consistent drug use was set forth clearly in the PSR and has never been disputed. Further, the district court did not make any explicit comment about Rodríguez's guilt based on arrests, <u>see id.</u> at 23, instead mentioning only generally that it was "taking into consideration that [Rodríguez's] criminal history category is underrepresented."

Despite these distinct facts, the result here is consistent with <u>Marrero-Pérez</u>.

convictions. The PSR -- to which Rodríguez expressly did not object -- discussed a range of illegal drug use by Rodríguez,[6] as did his own sentencing memorandum. As said, Rodríguez stated that he began smoking marijuana at the age of twelve, reverted to drug use in 2002 after a one-year break following a drug treatment program (completed in order to expunge his 2000 Puerto Rico drug arrest), and smoked marijuana approximately five times per day. Rodríguez tested positive for marijuana on February 27, 2017, shortly after his arrest in the present case. This covers the time period for all of Rodríguez's arrests for drug possession that did not lead to convictions (again, in January 2000, January and February 2009, and October 2010). Rodríguez's sentencing memorandum admitted that his "addiction has escalated [from marijuana] to the use of Cocaine and Percocet."

This provides "some greater indicia of reliability," beyond the mere fact of arrest, "that the conduct underlying the arrest[s] took place." Marrero-Pérez, 914 F.3d at 24. Even leaving aside the district court's consideration of the Section 3553(a) factors, discussed below, and the fact that these arrests and charges also went to the history and characteristics of Rodríguez, see United States v. Flores-Machicote, 706 F.3d 16, 21

---

[6] One of the convictions, the second Texas marijuana conviction, was charged as a felony and involved possession of about twenty-six pounds of marijuana.

- 15 -

(1st Cir. 2013), the district court did not rely merely on a bare arrest record.

Second and relatedly, we have held that a sentencing court may consider arrests not leading to convictions where "[t]here is no reason . . . given [defendant's] failure to contest the facts [in the PSR] and the absence of any acquittal, to doubt that these acts occurred." United States v. Tabares, 951 F.2d 405, 411 (1st Cir. 1991) (Breyer, J.). As said, Rodríguez did not dispute facts contained in the PSR or explained by the government at the sentencing hearing. All of Rodríguez's dismissed or expunged charges mentioned by the district court were dismissed or expunged "not because of any finding on the merits of the case[s], but for other reasons." Id. The 2000 charge for drug possession was expunged because Rodríguez had completed a diversionary drug treatment program. The charges from the two 2009 arrests for marijuana possession in Texas were dismissed on petition of the government due to Rodríguez's conviction on another 2009 marijuana possession charge. The 2010 New York marijuana charge was adjourned in contemplation of dismissal, and Rodríguez was arrested the next day on federal bank and wire fraud charges.

As to the Puerto Rico weapons possession arrest, the government said, and Rodríguez's counsel agreed at the sentencing hearing, that the charges were dismissed due to the speedy trial

rules in Puerto Rico.[7]  The district court most certainly did not consider any arrests which led to acquittals.

Third, even beyond underrepresentation of criminal history, the district court focused on a number of facts about the offense of conviction and Rodríguez that were clearly relevant to Section 3553(a) factors and to an upward variance, including: the type of weapon involved, an AM-15 "assault rifle" ("nature and circumstances of the offense"); risk of recidivism and commission of this crime shortly after the end of a supervised release term ("protect[ing] the public from further crimes of the defendant"); and Rodríguez's consistent illegal drug use and lack of steady employment ("history and characteristics of the defendant").  18 U.S.C. § 3553(a).  All of these provided additional reasonable justifications for an upward variance.  We have affirmed in numerous cases upward variances based on district courts' consideration of such factors.  See, e.g., United States v. Ortiz-Álvarez, 921 F.3d 313, 316 (1st Cir. 2019) (involvement of an "assault rifle"); United States v. Bermúdez-Meléndez, 827 F.3d 160, 164 (1st Cir. 2016) (involvement of an "assault rifle"); Flores-Machiote, 706 F.3d at 24 ("likely recidivism"); United

---

[7]     The record is not clear as to the reason for the dismissal of the conjugal threats charge, but the PSR states that it was dismissed, and the government stated (without objection) that further records from this arrest had been destroyed due to a timely motion by Rodríguez filed pursuant to Puerto Rico law.

States v. Santini-Santiago, 846 F.3d 487, 491 (1st Cir. 2017) ("drug use"); United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015) ("employment record").

There was no plain error by the district court here.[8]

2. This Case Involves a Variance Under 18 U.S.C. § 3553(a), Not a "Departure" Under U.S.S.G. § 4A1.3

We have explained why there is no plain error here and that this case is consistent with Marrero-Pérez. We add that there is an important structural distinction between this case and Marrero-Pérez that merits some discussion.

Marrero-Pérez relied substantially on a policy statement concerning upward departures, as specifically defined in the Guidelines. 914 F.3d at 22; see U.S.S.G. § 4A1.3(a); id. § 1B1.1 n.1(F)(2). This policy statement states in part that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be

---

[8] "Plain error review requires us to reverse only where a lower court's error is clear or obvious in light of the prevailing law, but 'Cortés-Medina held only that the law on this question [consideration of arrests] was unclear.'" Rondón-García, 886 F.3d at 26 (quoting United States v. Delgado-Sánchez, 849 F.3d 1, 13 (1st Cir. 2017)). So, even (wrongly) reading Marrero-Pérez as broadly as Rodríguez sought at oral argument, the district court's reference to the prior arrests would not amount to plain error based on the state of First Circuit law at the time of Rodríguez's sentencing.

- 18 -

warranted." Id. § 4A1.3(a)(1). More importantly for present purposes, it states that "[a] prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement."[9] Id. § 4A1.3(a)(3) (emphasis added). The Application Notes to the Guidelines state that "Departure" means, "for purposes of § 4A1.3 . . . assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guideline range." Id. § 1B1.1 n.1(F)(2).

Here, in contrast with Marrero-Pérez, the district court was varying upward, not departing, and referred specifically to its use of the Section 3553(a) factors. There was no assignment of a higher criminal history category, nor any mention of a departure.

There are significant differences between a departure and a variance. "In federal criminal sentencing, the term 'departure' is a term of art." United States v. Román-Díaz, 853 F.3d 591, 596 (1st Cir. 2017). As we have stated, quoting the Supreme Court in part,

> [a] 'departure,' as explained by the Supreme
> Court, 'is a term of art under the Guidelines

---

[9]    This policy statement does not purport to address upward variances. And in United States v. Martin, we recognized that "[p]olicy statements issued by the Sentencing Commission . . . normally are not decisive as to what may constitute a permissible ground for a variant sentence in a given case." 520 F.3d 87, 93 (1st Cir. 2008).

- 19 -

and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.'  Variant sentences, by contrast, . . . result from a court's consideration of the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).

United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014) (internal citations omitted) (quoting Irizarry v. United States, 553 U.S. 708, 714 (2008)).  Other circuits have recognized this departure/variance distinction.  See, e.g., United States v. Rodriguez, 855 F.3d 526, 532 n.7 (3d Cir. 2017) ("A 'departure' is different from a 'variance.'"); United States v. Hernandez, 435 F. App'x 873, 877 (11th Cir. 2011) (unpub.) ("On the record as a whole, we conclude the district court imposed a discretionary . . . upward variance based on the § 3553(a) factors, and not an upward departure based on U.S.S.G. § 4A1.3(a)."); United States v. Herrera-Zuniga, 571 F.3d 568, 586 (6th Cir. 2009) ("This Court has recognized the distinction between sentencing departures under U.S.S.G. § 4A1.3 and variances under 18 U.S.C. § 3553(a)."); United States v. Solis-Bermudez, 501 F.3d 882, 884 (8th Cir. 2007) ("[W]e have attempted to carefully distinguish between sentencing departures, which are provided for in . . . USSG § 4A1.3, and sentencing variances, which are . . . based on the factors enumerated in 18 U.S.C. § 3553(a)."); United States v. Mejia-Huerta, 480 F.3d 713, 721 (5th Cir. 2007) ("[A] sentencing court may impose a non-Guidelines sentence, i.e., a 'variance', but not

a 'departure,' if it calculates the proper sentencing range and references the broad array of factors set forth in § 3553(a).").  Importantly, the policy statement, as to the "arrest record itself," does not apply to a variance.  U.S.S.G. § 4A1.3(a).

The variance here resulted, in part, from the district court's determination that there was underrepresentation of the criminal history (perhaps due to prior arrests and the conduct underlying those arrests, perhaps due to facts underlying the prior convictions).  It is clear that, "[a]s part of the [18 U.S.C. § 3553(a)(1)] inquiry, a sentencing judge may consider whether a defendant's criminal history score substantially underrepresents the gravity of his past conduct."  Flores-Machicote, 706 F.3d at 21.  Indeed, "the very same factors that prompted the[] comments [on underrepresentation] also fit well within the scope of § 3553(a): . . . the drug use and prior arrest[s] bore on 'the characteristics of the defendant.'"  Santini-Santiago, 846 F.3d at 491 (quoting 18 U.S.C. § 3553(a)(1)).  So, underrepresentation "might also relate to a departure, but a sentencing court may 'echo' a departure consideration as one factor in its analysis, while still imposing a variance."  United States v. Acevedo-López, 873 F.3d 330, 342 (1st Cir. 2017) (quoting Aponte-Vellón, 754 F.3d at 93).  And like in Mercer, because the conduct -- here, arrests for illegal drug use -- underlying dismissed or expunged charges "was set forth in undisputed portions of the PSR, the District

Court was entitled to rely on that conduct when sentencing [the defendant]," 834 F.3d at 50, even assuming the district court indeed did so.[10]

In Marrero-Pérez, we did not purport to restrict district courts' use of the broad Section 3553(a) factors for a variance. Marrero-Pérez also did not purport to overrule First Circuit cases such as Martin, Tabares, and Mercer (respectively, recognizing a sentencing court's discretion to disagree with policy statements in the Guidelines in imposing a variant sentence; affirming the use by a sentencing court of arrests not leading to convictions where the defendant did not contest the conduct and where there were no acquittals; and recognizing the district court's entitlement to consider "conduct that took place in connection with the dismissed charges" that was "set forth in undisputed portions of the PSR"). See, e.g., United States v. Viloria-Sepulveda, 921 F.3d 5, 9 (1st Cir. 2019) (citing Martin positively); United States v. Vázquez, 724 F.3d 15, 30 n.12 (1st Cir. 2013) (citing Tabares positively). Nor could it have done so.

---

[10]    We do not suggest that only a bare arrest record, without more reliable explanation of or support for the underlying conduct and without consideration of the circumstances of disposition, would be a valid basis for an upward variance under Section 3553(a).  That issue is not presented on the record before us here.

3.  The District Court Adequately Considered the Section 3553(a) Factors

Next, Rodríguez argues that the district court did not adequately consider the 18 U.S.C. § 3553(a) factors, and that "[n]othing in the record specifically refers to any sentencing factor."  He is wrong.

"Failure to follow § 3553 results in prejudice warranting reversal for plain error if the defendant shows a reasonable probability that but for an obvious error the court would have imposed a more favorable sentence."  United States v. Ortíz-Mercado, 919 F.3d 686, 690 (1st Cir. 2019).

The district court explicitly stated that it considered the Section 3553(a) sentencing factors, and that statement is "entitled to significant weight."  United States v. Calderón-Lozano, 912 F.3d 644, 648 (1st Cir. 2019) (quoting United States v. Arroyo-Maldonado, 791 F.3d 193, 199 (1st Cir. 2015)).  The district court's explanation at the sentencing hearing, as we have recounted, demonstrated ample consideration of Rodríguez's "history and characteristics" as well as the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), including Rodríguez's education, and history of drug use, as well as "the nature of the weapon involved, an assault rifle, which accepts 5.56 millimeter military ammunition."  Further, the district court stated that Rodríguez's firearm offense came "less than five months

- 23 -

after having completed his supervised release term" for his federal wire and bank fraud offense. Indeed, both the attempted sale of an assault rifle and the timing of the offense are also surely relevant to Rodríguez's likelihood of recidivism[11] and the threat he posed to the safety of the community.

As we have said, "[f]ailure to follow § 3553 results in prejudice warranting reversal for plain error if the defendant shows a reasonable probability that but for an obvious error the court would have imposed a more favorable sentence." Ortíz-Mercado, 919 F.3d at 690. Rodríguez never argued, much less demonstrated, that he was so prejudiced.

4. There Was No Plain Error in the District Court Varying from the Government's Sentencing Recommendation

Rodríguez argues in passing that the district court should have followed the government's sentencing recommendation, because "the government ha[d] all the evidence . . . to consider an adequate plea agreement." This argument is waived for lack of developed argumentation. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

In any event, a Rule 11(c)(1)(b) plea does not bind a district court to the recommendation in a plea agreement. Fed. R.

---

[11] In discussing "protect[ing] the public from further crimes" and Rodríguez's "recidivism," the district court made no further reference to any of the arrests not leading to convictions, and so may well have been referring just to Rodríguez's multiple drug convictions and bank and wire fraud conviction.

Crim. P. 11(c)(1)(b); see United States v. Ubiles-Rosario, 867 F.3d 277, 294 (1st Cir. 2017) ("[T]he district court was not bound by the parties' recommendations."); United States v. Garcia-Pupo, 845 F.2d 8, 10 (1st Cir. 1988) ("[J]udges cannot be bound by a prosecutor's sentencing recommendation."). This was made clear to Rodríguez by a magistrate judge at the change-of-plea hearing, held about two months before the sentencing hearing. The choice by the district court of a sentence other than one recommended by the parties is not, in itself, error.

B.   Substantive Reasonableness

The standard of review for challenges to substantive reasonableness raised for the first time on appeal, between abuse of discretion and plain error, remains an open question in this circuit. See Ruiz-Huertas, 792 F.3d at 228. This question can be bypassed here because Rodríguez does not prevail even assuming, in his favor, that abuse of discretion applies.

To some extent blurring substantive and procedural reasonableness, Rodríguez argues that the district court failed to consider potentially mitigating factors (though he does not clearly delineate what these factors were) and failed to consider reasons for the government's request of twenty-one months. This means, he argues, that the district court failed "to weigh the Section 3353(a) factors and various mitigating circumstances

properly."  He also asserts that the sentence was longer than necessary for the purposes of sentencing.

There is no "requirement that a district court afford each of the section 3553(a) factors equal prominence," as "[t]he relative weight of each factor will vary with the idiosyncratic circumstances of each case."  United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).  Rodríguez does not even state what are the "various mitigating circumstances" that the district court allegedly ignored, so his argument fails on waiver.  Regardless, that Rodríguez disagrees with how the court weighed the factors "does not make the sentence unreasonable."  Clogston, 662 F.3d at 593.

Finally, as to Rodríguez's general contention that "[t]he sentence imposed was longer than necessary to comply with the purposes of sentencing," this argument also fails.  The district court offered a plausible rationale for the upward variance based substantially on Section 3553(a) factors.  The sentence imposed, thirty-six months' imprisonment, was "within the wide universe of reasonable sentencing outcomes" and that ends the matter.  Ruiz-Huertas, 792 F.3d at 229.

III.

Affirmed.